No. 24-40635

# United States Court of Appeals for the Fifth Circuit

JOSE GUADALUPE RODRIGUEZ, JR.,

*Plaintiff—Appellant*

## V.

PETE BUTTIGIEG, SECRETARY, U.S. DEPARTMENT OF TRANSPORTATION,

*Defendant—Appellee*

On Appeal from the United States District Court for the Southern District of Texas
(McAllen) No. 7:23-cv-450

## BRIEF OF DEFENDANT-APPELLEE

RESPECTFULLY SUBMITTED:

ALAMDAR S. HAMDANI
        United States Attorney
DANIEL DAVID HU
        Chief, Civil Division
DAVID L. GUERRA
        Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF TEXAS
1701 W. Business Hwy., Suite 600
MCALLEN, TX  78501
TEL: (956) 618-8010
FAX: (956) 618-8016

*Counsel for Defendant-Appellee Pete Buttigieg, Secretary, U.S. Department of Transportation*

## **CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Fifth Circuit Rule 28.2, the following persons and entities are listed as potentially having an interest in the outcome of this case:

1.  Plaintiff-Appellant Jose Guadalupe Rodriguez, and counsel for Plaintiff-Appellant, Daniel E. Vargas.

2.  Defendant-Appellee Pete Buttigieg, in his official capacity as Secretary of the United States Department of Transportation.

<div style="margin-left:50%">

s/ David L. Guerra
David L. Guerra
Counsel of Record for Defendant-
Appellee Pete Buttigieg, Secretary,
U.S. Department of Transportation

</div>

## **STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is not needed and should be denied in this case because (1) the facts and legal arguments are adequately presented in the briefs and record, and (2) the decisional process would not be significantly aided by oral argument.  Fed. R. App. P. 34(a)(2(C).

# **<u>TABLE OF CONTENTS</u>**

*Page*

CERTIFICATE OF INTERESTED PERSONS ....................................................... i

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................ iii

STATEMENT OF JURISDICTION......................................................................1

STATEMENT OF THE ISSUE .............................................................................1

STATEMENT OF THE CASE...............................................................................2

    I.   RELEVANT FACTUAL BACKGROUND................................................2

    II.  RELEVANT PROCEDURAL HISTORY ................................................4

SUMMARY OF ARGUMENT ..............................................................................7

ARGUMENT ..........................................................................................................8

    I.   STANDARD OF REVIEW .......................................................................8

    II.  THIS COURT SHOULD AFFIRM THE RULING BELOW......................................10

        A.  Plaintiff's Pleadings Reveal Plaintiff's EEO Claim Was Untimely. .........10

        B.  Plaintiff's Pleadings Present a Claim That Is Legally Untenable..............15

        C.  Amendment of Plaintiff's Pleadings Would Have Been Futile.................20

CONCLUSION......................................................................................................22

CERTIFICATE OF SERVICE .............................................................................25

CERTIFICATE OF COMPLIANCE REQUIRED BY RULE 32(G)(1) ...............26

# TABLE OF AUTHORITIES

*Page*

*Cases*

*Ashcroft v. Iqbal,*
  556 U.S. 662  (2009) ...........................................................................9

*Baker v. McHugh,*
  672 F. App'x 357 (5th Cir. 2016)..........................................................10

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................... 8, 9, 10

*Campbell v. City of San Antonio,*
  43 F.3d 973 (5th Cir. 1995)..................................................................10

*Conley v. Gibson,*
  355 U.S. 41 (1957) .................................................................................8

*Cuvillier v. Taylor,*
  503 F.3d 397 (5th Cir. 2007)................................................................10

*Delaware State College v. Ricks,*
  449 U.S. 250 (1980) .............................................................................13

*DeLoach v. Woodley,*
  405 F.2d 496 (5th Cir. 1968)................................................................22

*Granger v. Aaron's, Inc.,*
  636 F.3d 708 (5th Cir. 2011)................................................................13

*In re Katrina Canal Breaches Litigation,*
  495 F.3d 191 (5th Cir. 2007)..................................................................9

*Int'l Brotherhood of Teamsters v. United States,*
  431 U.S. 324 (1977) ...................................................................... 19, 20

*Johnson v. PRIDE Indus., Inc.,*
  7 F.4th 392 (5th Cir. 2021)..................................................................16

# TABLE OF AUTHORITIES
## (Cont'd)

*Lemonia v. Westlake Mgmt. Servs.,*
  2023 U.S. App. LEXIS 27717 (5th Cir. 2023)....................................16

*McMullin v. Miss. Dep't of Pub. Safety,*
  782 F.3d 251 (5th Cir. 2015) ................................................16

*Perez v. Region 20 Education Service Center,*
  307 F.3d 318 (5th Cir. 2002) ......................................... 18, 19

*Peterson v. Johnson,*
57 F.4th 225, 231 (5th Cir. 2023) ....................................…...10

*Ramirez v. City of San Antonio,*
  312 F.3d 178 (5th Cir. 2002) ..............................................13

*Taylor v. Books A Million, Inc.,*
  296 F.3d 376 (5th Cir. 2002) ..............................................10

*United States ex rel. Jackson v. Univ. of N. Tex.,*
  673 F. App'x 384 (5th Cir. 2016)..........................................22

### *Statutes*

28 U.S.C. § 1294 ...............................................................1

28 U.S.C. § 2107(b) ..........................................................1

### *Federal Rules of Appellate Procedure*

Fed. R. App. P. 4(a)(1)(B) ..................................................1

Fed. R. App. P. 32(a)(5)....................................................26

Fed. R. App. P. 32(a)(6)....................................................26

Fed. R. App. P. 32(a)(7)(B) ...............................................26

Fed. R. App. P. 32(f)........................................................26

# TABLE OF AUTHORITIES
## (Cont'd)

Fed. R. App. P. 34(a) ................................................................................. i

***Federal Rules of Civil Procedure***

Fed. R. Civ. P. 8(a)(2) ...............................................................................8

Fed. R. Civ. P. 12(b)(6) ................................................................... passim

***Regulations***

29 C.F.R. § 1614.105(a)(1) .......................................................................10

29 C.F.R. §1614.107(a)(1) .........................................................................5

29 C.F.R. § 1614.107(a)(2) .........................................................................5

29 C.F.R. § 1614.110(b) .............................................................................5

## **STATEMENT OF JURISDICTION**

This is an appeal from an order entered on August 26, 2024 by the United States District Court for the Southern District of Texas, McAllen Division (Crane, C.J.). *See* Record on Appeal (hereinafter "ROA") 138-147.  The district court's order granted Defendant's Motion to Dismiss, denied as moot Defendant's alternative Motion for Summary Judgment, denied Plaintiff's Motion for Leave to Amend, and dismissed with prejudice Plaintiff's employment discrimination case.   In that order, the district court explained in detail its reasons for granting Defendant's Motion to Dismiss.

Plaintiff-Appellant filed his notice of appeal on September 25, 2024 (ROA 148).  The notice was timely per 28 U.S.C. § 2107(b) and Fed. R. App. P. 4(a)(1)(B), thereby conferring this Court with jurisdiction over the appeal pursuant to 28 U.S.C. § 1294.

## **STATEMENT OF THE ISSUE**

Did the district court below correctly dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's race and national origin employment discrimination suit on the grounds that (1) Plaintiff's novel discrimination claim was untimely under applicable EEO regulations, (2) the claim failed to state to a claim for which relief could be granted, and (3) any amendment to the Complaint would have been futile?

## STATEMENT OF THE CASE

### I.   Relevant Factual Background

The following factual background is taken from the Complaint filed by Plaintiff Rodriguez (hereinafter "Rodriguez") against Defendant Pete Buttigieg, Secretary of the U.S. Department of Transportation (hereinafter "DOT") (ROA 6-14) ("Complaint"), and from the statements specifically admitted as true in Rodriguez's Response to DOT's Motion to Dismiss ("Response") (ROA 70-90).

On or about October 20, 2002, Rodriguez entered on duty with the Federal Motor Carrier Safety Administration ("FMCSA"), an agency within DOT, and has remained in federal service with this agency since that time. Among other duties, FMCSA is responsible for regulating and providing safety oversight of commercial motor vehicles at U.S. borders. (ROA 6-8).

Rodriguez was hired as a Motor Carrier Safety Specialist (Border Safety Inspector), GS-2123-07. Effective October 29, 2003, he was promoted to the grade 9 level. *Id*. Significantly, the grade 9 Motor Carrier Safety Specialist (Border Safety Inspector) is the journeyman level of this position, and there is no GS-2123-11 pay grade for the Motor Carrier Safety Specialist (Border Safety Inspector) position within FMCSA. *See, e.g.*, ROA 84 ("Plaintiff acknowledges that the specific title 'motor Carrier Safety Specialist (Border Inspector) GS-2123-11' does not currently

exist with FMCSA's classification system.") and ROA 85 ("a specific GS-2123-11 Border Inspector position does not exist").

There are GS-2123-11 Motor Carrier Safety Specialist positions (Supervisory Border Inspector, Safety Auditor, Safety Investigator), but they have completely different requirements. *Id.* Rodriguez's Complaint does not include any assertion that he sought these particular positions. If fact, no allegation is made in Rodriguez's Complaint or in any of his other filings below to the effect that Rodriguez has ever applied for a promotion to an *existing* position within DOT, let alone applied and been denied. Rather, in his Complaint and Response, Rodriguez contends that the work he has performed as a Safety Inspector throughout his tenure with DOT justified upgrading his position to include a GS-11 pay grade and that the failure of DOT to upgrade the position to include the GS-11 pay grade is due to a systemic desire to discriminate against Hispanic employees. *See, e.g.*, ROA 71 ("The issue of non-promotion has been raised by Plaintiff and other similarly situated Hispanic Border Inspectors on numerous occasions. This includes formal requests, internal discussions, and documented petitions. Each time, these requests have been ignored or denied without substantive justification, further evidencing the discriminatory practices at play.").

Significantly, Rodriguez specifically states in his Complaint that *by 2010*, he believed the failure of DOT to add a GS-11 pay grade to the Safety Inspector position

was motivated by discriminatory animus against Hispanics.  (ROA 8-9).  Yet

Rodriguez did not file, as required by EEO regulations, an employment

discrimination complaint with the agency until 2022, after he applied for an unlisted,

non-existent of position of GS-11 non-supervisory Safety Inspector.  Rodriguez does

allege he repeatedly complained over the course of many years about the lack of an

existing promotion possibility to a GS-11 pay grade (*see, e.g.*, ROA 70),  but the fact

remains the only actual filed claim of failure to promote because of race

discrimination that is identified in his Complaint or his Response is the one he filed

in September 2022, when he initiated the EEO claim process after he applied for,

and was denied, promotion to a non-existent GS-11 line Safety Inspector position.

*See*, *e.g*., ROA 71).  And to reveal how Rodriguez has always viewed his claim in

this suit, it is telling that he did not even identify this request for initial EEO

counseling in his Complaint.  Clearly, as Rodriguez himself stated in his brief before

this Court, "Plaintiff's claim centers on systemic discrimination due to FMCSA's

refusal to create promotion pathways for a predominantly Hispanic workforce, not

on individual non-selection for a position."  Appellant's Brief, p. 31.

## II.    Relevant Procedural History

After seeking initial counseling in September 2022 following the denial of his

application for a GS-11 Safety Inspector position (a position that was not advertised

or that even existed at DOT), Rodriguez filed, on January 25, 2023, a formal

complaint of discrimination with DOT, which was accepted on March 8, 2023.  In

his EEO complaint, Rodriguez raised two claims:

> Whether the Complainant was subjected to discrimination based on national origin (U.S. Citizen), race (Hispanic) and age (56) when:
>
> 1. From 2005 to present, management required the Complainant to perform work duties above the GS-9 grade level.
>
> 2. On or about September 20, 2022, management denied the Complainant's request for a promotion to a Motor Carrier Specialist (GS-2123-11) position.

ROA 76.

The agency conducted an investigation and issued a report of investigation

("ROI") on May 18, 2023, which found no grounds for the discrimination complaint.

Rodriguez did not submit a final agency decision ("FAD") request or request a

hearing. Accordingly, pursuant to 29 C.F.R. § 1614.110(b), the agency issued a

FAD.  Claims 1 and 2 were dismissed for failure to state a claim pursuant to 29

C.F.R. §1614.107(a)(1), and untimely counselor contact pursuant to 29 C.F.R. §

1614.107(a)(2). *Id.*

Rodriguez commenced this suit on December 26, 2023, alleging DOT

systematically discriminated against him on the basis of his race and national origin

by failing to create a GS-11 pay grade for his Safety Inspector position.  Complaint,

ROA pp. 6-8.

On April 15, 2024, DOT filed a Motion to Dismiss and/or Alternatively for Summary Judgment and Answer to Complaint. (ROA 25-52). Rodriguez filed a response to the Motion to Dismiss on July 11, 2024. (ROA 70-90). Rodriguez also filed a Motion for Leave to Amend his Complaint, ROA 91-92, and attached a proposed amended complaint. DOT filed a reply to Rodriguez's response, ROA 125-131, as well as a response to Rodriguez's Motion for Leave to Amend, ROA 132-135.

On September 1, 2024, Chief Judge Randy Crane of the Southern District of Texas issued an order granting DOT's Motion to Dismiss, denying as moot DOT's alternative Motion for Summary Judgment, and denying Rodriguez's Motion for Leave to Amend. The order held that Rodriguez's claim of discrimination was barred by his failure to seek EEO counseling within 45 days after he reasonably became aware he was allegedly being subjected to racially discriminatory conduct on the part of DOT. The order further held that, even assuming the claim was timely, the suit failed to state a cause of action for which relief could be granted, because it was based upon the failure to promote to a position that did not exist. Finally, the order detailed the lower court's conclusion that Rodriguez's desire to amend would be futile, in that any such amendment would not overcome the untimeliness of his claim and the legal flaws in his discrimination claim.

## SUMMARY OF ARGUMENT

The district court correctly dismissed Rodriguez's claim of employment discrimination. Rodriguez's own pleadings reveal he believed, as early as 2010, that DOT's failure to create a GS-11 pay grade for the Border Safety Inspector position was based upon a desire to discriminate against Hispanic employees like him. Yet Rodriguez did not comply with EEO regulations that require he initiate the EEO complaint process within 45 days of learning of the allegedly discriminatory conduct.

The district court also correctly determined that Rodriguez's novel discrimination suit failed to state a claim for which relief could be granted. The position Rodriguez alleges he was qualified for but did not receive, a GS-11 line Safety Inspector, does not exist within DOT's job classifications, and consequently the failure to promote Rodriguez to that non-existent position cannot form the basis of a failure-to-promote discrimination complaint. Nor did Rodriguez articulate a cognizable claim of discrimination based upon how the failure to create such a pay category for Safety Inspectors is itself discriminatory against Hispanic employees. The pay cap for line Safety Inspectors is the same for all employees in that position, Hispanic and non-Hispanic, including those who work at the both the northern and southern borders of the United States. Rodriguez has been treated no differently than non-Hispanic employees of DOT.

Finally, the district court did not err in denying Rodriguez leave to amend his complaint as futile.  The proposed amended complaint submitted by Rodriguez did not remedy the deficiencies in his original Complaint; rather, it made them more apparent.  The persons the proposed amended complaint sought to add as plaintiffs included non-Hispanics, and the persons Rodriguez identified as being treated better than him included Hispanic employees, and all the identified employees were promoted to positions different from the GS-11 Safety Inspector position that Rodriguez sought.

Accordingly, the ruling of the district court should be affirmed.

## **ARGUMENT**

### **I.    Standard of Review**

Rule 12(b)(6) of the Federal Rule of Civil Procedure authorizes a defendant to move for dismissal of an action where a plaintiff "fails to state a claim upon which relief may be granted."

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *Twombly* overruled the Supreme Court's prior statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 562-63 ("*Conley's* 'no set of facts' language ... is best forgotten as an incomplete, negative gloss on an accepted pleading standard ...."). To withstand a Rule 12(b)(6) motion, a complaint must now contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

In *Ashcroft v. Iqbal*, 556 U.S. 662  (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*. The Court set out the following procedure for evaluating whether a complaint should be dismissed: (1) identify allegations that are conclusory, and disregard them for purposes of determining whether the complaint states a claim for relief; and (2) determine whether the remaining allegations, accepted as true, plausibly suggest an entitlement to relief. *Iqbal*, 556 U.S. 662 at 1949-50.

With respect to the "plausibility" prong of the dismissal analysis, *Iqbal* explained that  "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The *Iqbal* Court further noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

9

unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Finally, the Supreme Court has made clear that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. 544). *See also Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995), and *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

This Court reviews *de novo* the granting of a motion to dismiss under Rule 12(b)(6). *Peterson v. Johnson*, 57 F.4th 225, 231 (5th Cir. 2023).

**II.     This Court Should Affirm the Ruling Below.**

A.     Plaintiff's Pleadings Reveal Plaintiff's EEO Claim Was Untimely.

Title 29 C.F.R. § 1614.105(a)(1) provides, in relevant part, that an aggrieved person must initiate contact with an EEO counselor within forty-five (45) days of the date of the alleged discriminatory act or, in the case of a personnel action, within 45 days of the effective date of the action. *Baker v. McHugh*, 672 F. App'x 357, 360 (5th Cir. 2016). Section 1614.105(a)(2) provides that an agency shall extend the 45-day time limit when the complainant shows that he or she was not notified of the time limit and was not otherwise aware of it; that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred; that despite due diligence, he or she was prevented by circumstances

beyond his or her control from contacting the EEO Counselor within the time limit; or for other reasons considered sufficient by the agency or the EEOC.

Here, in Rodriguez's Complaint, he argues that he had been performing above his GS-9 pay grade and that he should have been promoted as early as 2005. *See* ROA 8, para. 16 ("[Plaintiff]'s responsibilities continued to align more with a GS-2123-11 role, yet he received no promotion, only step increases in 2005 and 2006."). Rodriguez further alleges in his Complaint that he viewed the failure of DOT to create a GS-11 pay grade for line Safety Inspectors as rooted in racial discrimination against Hispanic employees. (ROA 8-9). Yet Rodriguez did not file, as required by EEO regulations, an employment discrimination complaint with the agency until 2022, after he applied for an unposted, non-existing position of GS-11 line (non-supervisory) Safety Inspector.

Rodriguez acknowledges in his Complaint that he repeatedly complained over the course of many years about the lack of a promotion possibility to a GS-11 pay grade (*see*, *e.g.*, ROA 8-9, 70). He further admits DOT's decision not to create a GS-11 pay grade for his position is the core basis of his claim of discrimination in this suit. See, *e.g.*, Appellant's Br. at 31 ("Plaintiff's claim centers on systemic discrimination due to FMCSA's refusal to create promotion pathways for a predominantly Hispanic workforce, not on individual non-selection for a position."). Yet the only actual filed claim of failure-to-promote because of race discrimination

11

that is identified in Rodriguez's filings below is the one he filed in September 2022, when he initiated the EEO claim process after he applied for, and was denied, promotion to a non-existent GS-11 line Safety Inspector position.  (ROA 71).

Significantly, Rodriguez did not even identify this request for initial EEO counseling in his Complaint.  Clearly, as Rodriguez himself stated in his Complaint and Response, he was aware of the action (actually, the absence of action) that he contends demonstrates discriminatory animus toward him and other Hispanic employees for many years prior to the initiation of EEO proceedings in 2022, and that he believed racism was behind that refusal to create a GS-11 pay grade for his position.  Such awareness without a timely initiation of the EEO complaint process conclusively confirms he did not satisfy the 45-day requirement set out in the EEO regulations.

Before the district court, in his Response to DOT's motion to dismiss, Rodriguez asserted that equitable tolling and the continuing violation doctrine justified his failure to initiate the mandatory EEO process back in 2010 and 2013, when he admits he was aware of the refusal to create a GS-11 pay grade and the allegely racist animus behind it.  But neither the equitable estoppel doctrine nor the continuing violation doctrine provides Rodriguez with a means to circumvent or extend the 45-day filing requirement.

First, as noted by the district court below, the equitable tolling doctrine is inapplicable to the facts here. Arguably, this finding should be reviewed for an abuse of discretion, rather than *de novo*. *Granger v. Aaron's, Inc*., 636 F.3d 708, 711-12 (5th Cir. 2011). But under either review standard, the lower court's decision concerning the doctrine is correct. Rodriguez admits his request for DOT to create a GS-11 pay grade was repeatedly met with refusals. Even if he was told further review might change this position, his failure to file a claim of discrimination would not be excusable, because an employer's promise to review – and potentially rectify – an earlier employment decision does not toll the limitations period. *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980). The period still runs from the moment of the discriminatory act. *Ramirez v. City of San Antonio*, 312 F.3d 178, 185 (5th Cir. 2002).

It is also clear from Rodriguez's pleadings that DOT's reviews and audits of Rodriguez's job position were undertaken *at Rodriguez's request*. DOT was not trying to mislead Rodriguez; instead, it was simply responding to his requests for audits and/or reviews. Moreover, Rodriguez clearly states in his pleadings that these audits and reviews invariably resulted in the decision by DOT to *not* create a GS-11 pay grade for Rodriguez's position. Rodriguez was not mislead; rather, he was informed no such pay grade would be forthcoming. As a consequence, Rodriguez was required under EEO regulations to file his discrimination complaint many years

ago, when these audits and review were concluded if not before, if he wished to preserve and advance his claim of racism on the part of DOT in failing to create the higher pay grade.

Similarly, the continuing violation doctrine is inapplicable here. Application of the doctrine requires, by its terms, an *action* taken by the employer within the time frame for filing an EEO complaint with the employer. But Rodriguez's complaint is not about some action taken by DOT, but rather by the *inaction* of the agency, specifically the failure to create a GS-11 pay grade for line Safety Inspectors. To again reference how Rodriguez has characterized his claim in his brief before this Court, this case is about the allegedly discriminatory effect of the agency's failure to create the new pay grade, not about the denial of his application in 2022 for the non-existent GS-11 position.

To allow the application of the continuing violation doctrine in this situation would effectively eliminate the 45-day limitations requirement, as a claimant could always extend the deadline simply by requesting again that the employer do something that the employer had previously declined to do. Similarly, it would allow an employee who has been wrongfully demoted to circumvent the requirement that he or she initiate the EEO process within 45 days after the demotion by the employee saying he or she remains demoted and is thus permitted to file an EEO

claim at any time as long as he or she remains in the demoted position, even if years later.

These examples make clear that the legal argument advanced by Rodriguez for applying the continuing violation doctrine here is simply non-sensical. It would effectively negate the purpose of the requirement that an employee invoke the EEO complaint process within a set time after he or she reasonably becomes aware that an allegedly discriminatory action has occurred.

For these reasons, this Court should affirm the decision of the district court that Rodriguez's claim in this suit was barred as untimely under EEO regulations.

B.    Plaintiff's Pleadings Present a Claim That Is Legally Untenable.

To preserve his argument that his claim was timely made under EEO regulations, Rodriguez, at least initially, attempts to characterize his discrimination complaint as one challenging a decision by DOT to deny him a promotion he sought in 2022 (in the latter part of his Response in the district court and in his brief in this Court, Rodriguez is more candid in acknowledging that his complaint is really about DOT's refusal to create a GS-11 pay grade for Border Inspectors).

In the Fifth Circuit, a plaintiff who wishes to assert an employment discrimination claim based on a failure-to-promote theory must show: (1) he is a member of a protected class; (2) he sought and was qualified for a position for which applicants were being sought; (3) he was rejected for the position; and (4) the

employer either (a) hired a person outside of the plaintiff's protected class, or (b) continued to seek applicants with the plaintiff's qualifications. *Lemonia v. Westlake Mgmt. Servs.,* No. 22-30630, 2023 U.S. App. LEXIS 27717, *11-12 (*Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 406 (5th Cir. 2021) (citing *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015))).

In this case, the "promotion" Rodriguez sought in 2022 was for a position that does not exist.  In his Response, Rodriguez *expressly admits no GS-11 Border Inspector position exists*.  *See, e.g.*, ROA 83 ("Plaintiff acknowledges that the specific title 'motor Carrier Safety Specialist (Border Inspector) GS-2123-11' does not currently exist with FMCSA's classification system.") and ROA 84 ("a specific GS-2123-11 Border Inspector position does not exist").

Rodriguez wants a GS-11 position *to be created* for Border Inspectors, so that DOT may be authorized to pay Border Inspectors more than the upper limits set for a job with a GS-9 designation.  Rodriguez acknowledges the Border Inspector position he occupies with DOT was twice reviewed by DOT to determine if it should be upgraded from a GS-9 upper limit to a GS-11 upper limit.  Rodriguez claims these evaluations constitute evidence "that the duties performed by Plaintiff and other Border Inspectors align with higher pay grades."  But in fact, the reviews came to the opposite conclusion, because the position of Border Inspector was not upgraded to include a GS-11 pay grade.

Rodriguez asserts that the decision to keep Border Inspectors at only the GS-9 level was prompted by a desire to discriminate against Hispanic employees. But in his Complaint, in his Response, and in his brief in this Court, Rodriguez does not identify any direct evidence in support of this claim of discriminatory animus. He does not provide any oral or written statement expressing a negative attitude or feeling toward Hispanic employees on the part of DOT. Rodriguez's two immediate supervisors are themselves Hispanic men who are not alleged by Rodriguez to have expressed racist feelings toward Rodriguez. Nor does Rodriguez identify any statement, written or oral, of any other DOT official that would arguably sustain a finding of animus toward people of Hispanic race or national origin.

As to indirect evidence of discriminatory intent, Rodriguez does not identify in his Complaint or elsewhere a single non-Hispanic person *in the same position as Rodriguez* who has been treated more favorably than Rodriguez, something which is typically required in the absence of direct evidence for such a credible assertion of animus based on race or national origin. That is, Rodriguez does not provide a single example of a non-Hispanic line Border Safety Inspector who is allegedly being paid at the GS-11 pay grade. Although Rodriguez mentions, on page 4 of his Response, the names of several persons who he believes are comparable to him (including several of whom are obviously Hispanic), he does not actually identify these persons as being Border Safety Inspectors, and in fact notes they are not

Inspectors but rather Investigators, a position that itself *does have* an existing GS-11 pay grade classification.

Rodriguez is thus relegated to contending the decision of DOT not to create a GS-11 pay grade for Border Inspectors is intended to discriminate against Hispanics because, he asserts, most of these positions are occupied by Hispanics. Rodriguez offers no evidence of this claim; he merely asserts it without citation to any report or other documentation. But in any event, Rodriguez acknowledges at least some of the people in Border Inspector positions are non-Hispanic, when he says *most*, but not all, of the positions are held by Hispanics, and that they are predominately held by Hispanics. And given that most of the physical locations of these positions are at or near the southern borders of the United States, where a significant majority of the population is Hispanic, it would be natural, but not in any way inherently discriminatory, for a large percentage of the people seeking and filling these positions to be Hispanic. Furthermore, the GS-9 pay cap on Border Safety Inspectors is equally applicable to such employees on the northern border with Canada, where Hispanics no doubt hold a minority of such positions.

Rodriguez's claims in this case are similar those asserted in *Perez v. Region 20 Education Service Center*, 307 F.3d 318 (5th Cir. 2002). There, this Court described the plaintiff's job situation as follows:

> Perez wished to become a Database Administrator for the RSCCC group. Unlike other computer groups at Region 20, the RSCCC group

did not have a Database Administrator position. Perez began taking on some database administration duties. These duties were not part of Perez's job description, but employees at Region 20 often took on duties outside of their job descriptions. Perez submitted a request to Region 20 asking to be promoted to, or reclassified as, a Database Administrator because it was a higher-level position than Senior Analyst Specialist II. Perez's request was not granted because there was no Database Administrator position available in the RSCCC group, but Perez was told that if the position was ever approved and funded for his group, he would get the position.

This Court affirmed the district court's grant of summary judgment in favor of the defendant employer on Perez's Title VII failure-to-promote claim. "The nonexistence of an available position is a legitimate reason not to promote." *Id*. at 325. The Court cited to the Supreme Court decision in *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n. 44 (1977) (finding that the "absence of a vacancy in the job sought" is a legitimate reason for not hiring a person for a position).

This ruling in *Perez* is directly applicable to the current case brought by Rodriguez. As in *Perez*, Rodriguez says he does work that is beyond his usual assigned duties. But that did not change the fact that his assigned position is as a Safety Inspector (technically labeled as Motor Carrier Safety Specialist), which is capped at a GS-9 designation. There is no GS-11 position for Safety Inspectors, and Plaintiff has not contended he has sought an existing GS-11 position (such as Investigator) for which he was denied. Consequently, Rodriguez's suit is groundless

as a matter of law, as it simply cannot be discriminatory to fail to promote someone to a non-existent position.

It was therefore proper for the district court to conclude that Rodriguez has failed to state a claim for which relief could be granted. This Court should affirm that decision.

C.    Amendment of Plaintiff's Pleadings Would Have Been Futile.

Rodriguez assets it was error for the district court to deny his motion for leave to amend his Complaint.  In that motion, and in the proposed amended complaint attached as an exhibit to the Motion (ROA 91-124), Rodriguez sought to add, as additional plaintiffs, nine other persons employed as Border Inspectors with DOT. Rodriguez also sought, he said, to identify "comparators" (employees outside Rodriguez's race and national origin classifications who were treated more favorably than Rodriguez and the additional putative plaintiffs).  Finally, Plaintiff said he wanted to amend his Complaint to include specific instances of adverse employment actions not previously discussed in his original Complaint. *Id.*

Of the putative plaintiffs named in the proposed amended complaint, none is alleged to have previously filed a discrimination complaint with appropriate EEO personnel within DOT, which, as discussed above, is an administrative exhaustion prerequisite for an EEO suit in federal court.  None claims to have sought and been denied a promotion to an *existing position* at DOT.  Finally, at least two of the

putative plaintiffs appear to be of European and/or African descent, and there is no allegation in the proposed amended complaint that they are Hispanic. Their inclusion in the group supposedly being discriminated against because of their Hispanic race and national origin is a direct *refutation* of the basic premise of Rodriguez's whole discrimination case.

Rodriguez and the putative plaintiffs also fail to present, in the proposed amended complaint, non-class "comparators" who are alleged to have been treated more favorably than Plaintiff and the putative plaintiffs. The persons listed as comparators are not truly comparable at all. Most of them are of the *same race and national origin* (Hispanic) as Plaintiff and some of the putative plaintiffs. Moreover, the persons listed as having been promoted are all identified as having been promoted to existing GS-11 positions (Border Safety Investigator, Border Auditor or Border Safety Inspector Supervisor), positions that neither Rodriguez nor any of the other putative plaintiffs claim to have sought and been denied. Nothing in the proposed amended complaint changes the undeniable fact that Rodriguez and the putative plaintiffs have failed to present even a *prima facia* case of discrimination based upon race or national origin, either through direct evidence of antipathy toward them due to their race and/or national origin, or through indirect evidence of comparable persons outside of their race and/or national origin being treated more favorably notwithstanding an identical situation.

21

The proposed amended complaint also fails to address the most serious problem with Plaintiff's case, namely, the absence of an existing position that was denied to Plaintiff (and to the putative plaintiffs).

For all of these reasons, amending Rodriguez's complaint, as set out in the proposed amended complaint, would be entirely futile, and it was thus not an abuse of discretion for the district court to deny Rodriguez's motion for leave to amend. *See United States ex rel. Jackson v. Univ. of N. Tex.*, 673 F. App'x 384, 388 (5th Cir. 2016) (quoting *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) (per curiam)) (courts "need not indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted.").

## CONCLUSION

The district court correctly determined Rodriguez failed to state a claim for which relief could be granted. Rodriguez's own statements, in his Complaint and in his Response, confirm that Rodriguez believed he had for many years been the victim of race and national origin discrimination by DOT, and yet he failed to assert that claim within the time period required by EEO regulations. His efforts to extend the deadline (by filing an application for a non-existent position, and by arguing for the application of the equitable tolling and continuing violation doctrines) were patently unavailing to circumvent or extend the deadline.

The district court also correctly held that even if Rodriguez's "failure to promote" discrimination claim was considered timely, it nonetheless failed to state a claim for which relief could be granted. As recognized by both the Supreme Court and this Court, an employer cannot be held liable under federal employment discrimination law for failing to promote an employee to a position that does not exist. And to contend that the failure to create a position can itself be the basis for a racial discrimination case is similarly untenable where the effect of such a supposed failure would fall equally upon employees of all races and national origins.

Finally, the district court correctly denied as futile Rodriguez's request to amend his pleadings. No pleading amendments would have been able to overcome the timeliness failure and legal deficiency inherent in Rodriguez's claim, and the specific proposed amended complaint proffered by Rodriguez did not do so.

For the reasons set forth above, and those set out in the district court's order (ROA 138-148), this Court should affirm the decision of the district court.

Respectfully submitted,

ALAMDAR S. HAMDANI
United States Attorney

DANIEL DAVID HU
Chief, Civil Division

By:   s/ David L. Guerra
      David L. Guerra
      Assistant U.S. Attorney

U.S. ATTORNEY'S OFFICE
SOUTHERN DISTRICT OF TEXAS
1701 West Business Hwy., Suite 600
McAllen, TX 78501
Tel: (956) 618-8010
Fax: (956) 618-8016
David.Guerra@usdoj.gov

*Counsel for Defendant-Appellee Pete Buttiegieg, Secretary, U.S. Department of Transportation*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Brief of Defendant-Appellee has been filed by electronic case filing and served on all counsel of record with active electronic filing privileges in this Court through the Court's Notice of Docket Activity on this 30st day of December, 2024.

s/ David L. Guerra
David L. Guerra

## **CERTIFICATE OF COMPLIANCE REQUIRED BY RULE 32(g)(1)**

Undersigned counsel certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,364 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Undersigned counsel further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Fifth Circuit Rule 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced 14-point (12-point for footnotes) Times New Roman typeface using Microsoft Word 365.

s/ David L. Guerra
David L. Guerra

*Counsel for Defendant-Appellee Pete Buttiegieg, Secretary, U.S. Department of Transportation*

Dated:  December 30, 2024